**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                  :
JOSEPH WILSON RENE,               :
                                  :        Civil Action No. 06-0336 (JAG)
              Petitioner,         :
                                  :
       v.                         :        **O P I N I O N**
                                  :
SECRETARY OF DEPARTMENT           :
OF HOMELAND SECURITY,             :
MICHAEL CHERTOFF, et al.,         :
                                  :
              Respondents.        :
_____:


**APPEARANCES:**

      JOSEPH WILSON RENE, Petitioner pro se
      ID. # A 44-599-709
      M.C.A.C.C.
      NEW BRUNSWICK, NJ 08903

      CHRISTOPHER J. CHRISTIE,
      United States Attorney;
      LEAH A. BYNON,
      Assistant United States Attorney
      970 Broad Street
      Newark, New Jersey 07102
      Attorneys for Respondents


**GREENAWAY, JR., District Judge**

      On January 24, 2006, Petitioner JOSEPH WILSON RENE ("Petitioner"), a native of

Haiti who entered the United States as a lawful permanent resident on September 8, 1995, filed

–1–

the instant Petition seeking the issuance of a Writ of Habeas Corpus, under 28 U.S.C. § 2241, challenging his detention by the Department of Homeland Security (hereinafter "DHS").[1] Petitioner, an aggravated felon under a final order of removal, asserts that he is being held in custody in violation of 8 U.S.C. § 1231(a)(6), as clarified in Zadvydas v. Davis, 533 U.S. 678 (2001), and the Due Process Clause of the Fifth Amendment.  (Pet. for Writ of Habeas Corpus (hereinafter Pet.) 7-9.)  Specifically, Petitioner notes that (1) "his removal is not reasonably foreseeable," (2) he "has cooperated fully with ICE's efforts to remove him from the United States," and (3) his custody reviews have not been duly executed.  (Pet. 6, 9-10.)

On February 10, 2006, this Court ordered the government to file and serve an answer and copies of all documents relating to Petitioner's claim.  On April 27, 2006, the government filed an Answer and Request to Dismiss the Petition ("Answer"), a declaration of counsel, and copies of the documents on Petitioner's Administrative Record ("AR").

Relying on 8 U.S.C. § 1231(a)(1)(C), the government argues that the Petition should be dismissed because of "[P]etitioner's . . . failure to complete the necessary travel documents that would permit effectuation of the removal order that is causing him to remain in."  (Answer 1.)  In addition, the government contends that Petitioner's in-custody status has been, and is expected to continue to be, frequently reviewed.  (Pet. 3-4.)

This Court concludes that the Petition should be dismissed without prejudice because

---

[1]   The Homeland Security Act of 2002, 6 U.S.C. §§ 101-557, P.L. 107-296, 116 Stat. 2135 (Nov. 25, 2002), created the Bureau of Citizenship and Immigration Services ("BCIS") within the Department of Homeland Security.  See 6 U.S.C. § 271(a).  The Act transferred the functions of the Commissioner of the Immigration and Naturalization Service ("INS") to the Director of BCIS, see 6 U.S.C. § 271(b), and abolished INS.  See 6 U.S.C. § 291.  Accordingly, DHS replaced INS on March 1, 2003.

Petitioner may, at some point, develop evidence to support his claim that his removal is no longer reasonably foreseeable.

## JURISDICTION

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody,"; and (2) the custody could be "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see also Maleng v. Cook, 490 U.S. 488, 490 (1989). This Court has subject matter jurisdiction over the instant Petition under § 2241 because Petitioner was detained within its jurisdiction at the time he filed his Petition and he asserts that his detention is not statutorily authorized and violates his constitutional rights. See Zadvydas, 533 U.S. at 699.

## BACKGROUND

Petitioner contends that his detention is not statutorily authorized and deprives him of a liberty interest in violation of the Fifth Amendment of the United States Constitution. (Pet. 6-9, (relying on Zadvydas, 533 U.S. at 700-701)). The DHS counters that, since Petitioner has not been cooperating in the process of securing his removal to Haiti until very recently, Petitioner is not entitled to release. (Answer 5-6.)

Petitioner also asserts that he has cooperated fully in securing his removal. Petitioner contends that, after being "ordered removed to the country of his birth, Haiti, on April 25, 2005," and having his appeal denied around May 23, 2005, Petitioner "has cooperated fully with ICE's efforts to remove him from the United States." (Pet. 4-5.) Specifically, "[o]n September 30,

2005 (approximately 4 months after being denied by [the] BIA), Petitioner filled out and signed an application for a travel document to Haiti."  ( Pet. 6.)  In addition, Petitioner asserts that he "filled out another travel document form on 12/25/2005," plus, had Petitioner been given any other documents to fill [out], for instance "the Fiche Signaletique Du Deporte Form[,] he would of willing [sic] filled it out."  (Pet. 7.)

The government, however, has no record of any "application for a travel document" signed by Petitioner on September 30, 2005, or December 12, 2005.[2]  (Answer 3.)  Petitioner's AR, however, contains (1) the "Fiche Signaletique Du Deporte" form which Petitioner was directed to fill out but refused to sign on June 20, 2005.[3]  (Administrative R. at Ex. F.)  The form contained check-marks where Petitioner was expected to affix his signature and the inscription "Refused."  (Administrative R. at Ex. F.)  Additionally, Petitioner's AR contains two pertinent warnings issued by the government and signed by Petitioner during this period of time including: (1) a "Warning for Failure to Depart" dated September 15, 2005, notifying Petitioner about the sanctions applicable to those aliens who "wilfully fail[] or refuse[] to make timely application in good faith for travel . . . documents necessary"; and (2) an "Instruction Sheet . . . Regarding Requirement to Assist in Removal" dated October 5, 2005, listing "app[ication] for travel document" among the actions Petitioner was required to complete.  (Administrative R. at Ex. G.)

Petitioner's AR also includes: (1) a Notice of Failure to Comply signed by Petitioner

---

[2]  The government clarifies that "[t]he Haitian government does not issue an individual 'travel document' per se.  Rather, upon submission of the aliens' documents and their "Fiche Signaletique Du Deporte" forms, Haiti issues a repatriation list of names.  An individual must be on the repatriation list in order to board the Charter to Haiti."  (Answer 3 n. 2.)

[3]  "This document is a form required by the Haitian Government for consideration of repatriation."  (Answer 3.)

which informed Petitioner that his custody status had been reviewed and that he would not be
released from custody due to his failure to complete the "Fiche Signaletique Du Deporte" form;
(2) the Petitioner's "Post Order Custody Review Worksheet" in which Declaration of
Deportation Officer Kerry Gill recommended against Petitioner's release because of Petitioner's
refusal to sign the "Fiche Signaletique Du Deporte" form;[4] (3) three Warnings of Failure to
Depart that were all signed by Petitioner, dated December 22, 2005, January 18, 2006, and March
1, 2006, advising Petitioner of his obligation to cooperate in obtaining travel documents; and (4)
a "Notice to Alien of File Custody Review" signed and dated by Petitioner on March 15, 2006.
(Administrative R. Exs. at A, I, J, K, M.)

     Despite the factual recitation above, Petitioner now contests the fact that he was ever
presented with a "Fiche Signaletique Du Deporte" form at any time prior to filing the instant
Petition.  (Pet. 7.)  It is undisputed, based on the record, that (1) at some point, Petitioner was
served with a "Fiche Signaletique Du Deporte" form, and (2) executed it on March 15, 2006.

     Finally, while the relief Petitioner expressly seeks in this action is his immediate release,
it appears that Petitioner also asserts that he was denied a "timely" and "adequate" custody
review.  Petitioner contends he has been denied "a timely and meaningful opportunity to
demonstrate that he should not be detained," and that "[t]he failure of Respondents to provide a
neutral decision-maker to review continued custody of Petitioner violates his right to procedural
due process. . . .  Further, there is no . . . mechanism in place for Petitioner to demand [a]
decision, ensure that a decision will ever be made, or appeal a custody review decision."  (Pet. 9-

---

[4]  Deportation Officer Kerry Gill noted that Petitioner did not sign  the "Fiche
Signaletique Du Deporte" form until March 15, 2006.  (Administrative. R. at Ex. J.)

10.)  Petitioner's record, however, indicates that: (1) Petitioner was issued a "Notice to Alien of File Custody Review" on September 12, 2005, and served with the Notice on September 15, 2005; (2) Petitioner had his custody review conducted on October 5, 2005; and (3) Petitioner had another "Notice to Alien of File Custody Review" issued on March 10, 2006, and served upon him on March 15, 2006, advising Petitioner that his next file review would take place on June 15, 2006.  (Administrative R. at Exs. A, H, M.)

## DISCUSSION

Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien from the United States.  However, that "period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C).  Hence, during the "removal period," the alien must be detained and, after the removal period, the government may detain the alien or release him subject to conditions of release.  See id. § 1231(a)(2), (a)(6).

In Zadvydas, the Supreme Court held that aliens may be detained under § 1231(a)(6) only for "a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689 (holding that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States [and] does not permit *indefinite* detention" (emphasis added).)

Recognizing that its holding would lead to difficult judgment calls in the courts, the

Supreme Court, "for the sake of uniform administration in the federal courts," recognized a

six-month "presumptively reasonable period of detention." Id. at 700-701. However, nothing in

the language of the Zadvydas decision limited the tolling-like function enunciated in 8 U.S.C.

§ 1231(a)(1)(C).[5] Hence, Petitioner's detention period from June 20, 2005, to March 15, 2006,

during which Petitioner refused to sign the "Fiche Signaletique Du Deporte" form, cannot be

factored in any evaluation of feasibility of Petitioner's removal or reasonableness of Petitioner's

detention.[6] Since Petitioner was detained for only one month from the time he signed the "Fiche

Signaletique Du Deporte" form until the time Petitioner filed the instant Petition, that is, one-

sixth of the six month "presumptive period" suggested in Zadvydas, this Court finds that the

period presents insufficient evidence to indicate that Petitioner's removal is unlikely in the

foreseeable future. Accord Qing Di Wang v. Carbone, 2005 U.S. Dist. LEXIS 24499 (D.N.J.

Oct. 17, 2005) (excluding the period of non-cooperation and citing Riley v. Greene, 149 F. Supp.

2d 1256, 1262 (D. Colo. 2001); and Sango-Dema v. District Director, 122 F. Supp. 2d 213, 221

(D. Mass. 2000)).

---

[5] Indeed, it would be anomalous to suggest that alien's frustration with the government's efforts to remove him would reward the alien with release from custody if the alien is persistent enough to keep his thwarting activities for a period exceeding Zadvydas' six months. "Zadvydas does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." Pelich v. INS, 329 F.3d 1057, 1060 (9th Cir. 2003).

[6] While this Court takes note of Petitioner's claim that--AR evidence notwithstanding-- Petitioner was not availed to a "Fiche Signaletique Du Deporte" form  prior to filing the instant Petition, his AR suggests, at the very minimum, that Petitioner (1) was duly notified on at least five other occasions that a certain additional cooperative action was required on Petitioner's part in order to facilitate his removal; yet (2) made neither an effort to detect what kind of action was expected, nor tried to comply with that particular action.  Accord Pelich, 329 F.3d at 1060.

Moreover, even if this Court is to factor Petitioner's Refusal Period into its calculations, and to hypothesize that Petitioner's <u>Zadvydas</u>' "presumptive period" has expired, this lone fact would not necessarily entitle Petitioner to habeas relief.  The Supreme Court expressly addressed such a scenario in <u>Zadvydas</u>, stating:

> After this 6-month period, once the alien provides <u>good reason to believe</u> that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

<u>Zadvydas</u>, 533 U.S. at 701 (emphasis added).

Thus, this Court must determine whether, at the current juncture, Petitioner provided "good reason to believe that there is no significant likelihood of [Petitioner's removal in the reasonably foreseeable future."  <u>Id.</u>; <u>see also Akinwale v. Ashcroft</u>, 287 F.3d 1050, 1052 (11th Cir. 2002) ("[I]n order to state a claim under <u>Zadvydas</u>, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future"); <u>see also Nma v. Ridge</u>, 286 F. Supp. 2d 469, 474 (E.D. Pa. 2003).

This Court finds that Petitioner failed to carry his burden of showing "good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future." Nothing in Petitioner's application indicates that Petitioner has even made any effort to determine the prospects of his removal, and Petitioner's claim that his removal is unlikely is

based on the following three "facts":[7] (1) Petitioner's own statement that, "[a]s Petitioner has established, there is no realistic chance that he will be removed to Haiti, thus his removal is not reasonably foreseeable," (Pet. 9); (2) Petitioner's own conclusion that his "6-month presumptively reasonable period has passed," (Pet. 9, 10); and (3) copies of two unrelated newspaper articles attached to the Petition.[8]

None of these facts suffice.  As this Court has noted, Petitioner's "presumptively reasonable period" (1) was altered by Petitioner's failure to cooperate during the Refusal Period; and (2) the sole fact of the length of post-removal-order period is, in itself, insufficient evidence. See Zadvydas, 533 U.S. at 701.   To carry his burden, Petitioner must present evidence beyond his own speculation and conjecture.  Id.  To shift the burden to the government, Petitioner must demonstrate that "the circumstances of his status" or the existence of "particular barriers to his repatriation" to his country of origin are such that there is no significant likelihood of removal in

---

[7]  The Petition also contains statements which, with a stretch, could be interpreted by this Court as vaguely stating that Petitioner had two indications that his removal could be a bit of a challenge.  (Pet. 4-5.)  Petitioner asserts that "Immigration Judge Cabrera stated that Haiti was [a] country going through a lot of difficulties"; "[o]n September 30, 2005, . . . Deportation Officer Peratta informed . . . Petitioner that Haiti was not taking anyone at the moment."  (Pet. 4-5.)  However, nothing in these statements, even if they were actually made, indicate that Petitioner's removal is unfeasible in the "reasonably foreseeable future."  (Pet. 9-10.)

[8]  One of the articles discusses the Supreme Court ruling in Zadvydas, while the other is dedicated to the assassination of Brazilian General Urano Teixera Da Matta Bacellar, the military chief of the UN Stabilization Mission in Haiti.  Petitioner's advisement with respect to the Zadvydas ruling is puzzling but the purpose of the second article is entirely unclear.  Presumably, Petitioner's aim is to indicate that any person in Haiti, whether Petitioner or General Da Matta Bacellar, is in mortal danger.  If so, Petitioner's reference to General Da Matta Bacellar's death is irrelevant to this Court's inquiry since Petitioner conceded that his application to withhold his removal under the United Nations Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, was considered and denied by the immigration judge. (Pet. 5.)

the reasonably foreseeable future.  See Fahim v. Ashcroft, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002).

The lack of progress in Petitioner's immigration case "does not in and of itself meet his burden of showing that there is no significant likelihood of removal."  See Fahim, 227 F. Supp. 2d at 1366.  "It [might] simply show[] that the bureaucratic gears of the [federal immigration agency] are slowly grinding away."  Khan v. Fasano, 194 F. Supp. 2d 1134, 1137 (S.D. Cal. 2001).

In sum, Petitioner has presented nothing upon which this Court can rely to determine that there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future. Petitioner has presented no information about his particular status or identified any specific barriers to his return to Haiti.[9]  Further, Petitioner fails to support his contention that there is no significant likelihood of removal in the reasonably foreseeable future.  Compare Rajigah v. Conway, 268 F. Supp. 2d 159 (E.D.N.Y. 2003) (finding that the submission of a letter from an appropriate ambassador which indicated "that the embassy will not issue travel documents to [petitioner] both because of his pending judicial proceedings and because of his inability to receive adequate medical treatment for his eye disease" sufficed to carry petitioner's burden). Since self-serving speculation as to reasons for slow governmental action or the political prospects of the country of removal do not suffice to carry Petitioner's burden, Petitioner is not entitled to release from custody.

_____

[9]  Compare Rice Reiterates U.S. Support for Haitian Electoral Process - Secretary joins Haiti's prime minister at press conference in Port-au-Prince, State Department Press Releases And Documents (Sep. 27, 2005) (revealing that, since deported felons cause security concerns in Port-au-Prince, Haiti was seeking a mere temporary moratorium on deportation during the period of the country's national elections).

Accordingly, this Court now turns to Petitioner's assertions that his procedural due process was violated by custody reviews that Petitioner deemed inadequate.

First, this Court notes that, since Petitioner in not entitled to release under <u>Zadvydas</u>, he is not entitled to this type of remedy even if he could establish due process violations.  <u>See Haitian Refugee Ctr. v. Smith</u>, 676 F.2d 1023, 1041 (5th Cir. 1982) (noting that, "[a]lthough a federal court has broad equitable powers to remedy constitutional violations, it must tailor the scope of injunctive relief to fit the nature and extent of the constitutional violation established").  "When no substantive due process violation has been established, release from detention seems an inappropriate remedy for alleged violations of the procedural protections afforded removable aliens such as Petitioner."  <u>Idowu v. Ridge</u>, 2003 U.S. Dist. LEXIS 13503, at *16 (N.D. Tex. Aug. 4, 2003) (citing <u>Haitian Refugee Ctr.</u>, 676 F.2d at 1041, and <u>Wang v. Ashcroft</u>, 320 F.3d 130, 146 (2d Cir. 2003)).

However, since Petitioner, in addition to his plea for immediate release and injunction, also seeks "any other and further relief that this Court deems just and proper," this Court examined the procedural processes afforded to Petitioner for constitutional defects.

Petitioner asserts that his procedural rights have been violated under 8 C.F.R. § 241.4, since Petitioner: (1) did not have his initial custody reviews conducted within 90 days of the final order of removal and was not notified of such review thirty days in advance; and (2) cannot have his custody reviews conducted on his own demand, and by a non-agency body.[10]  (Pet. 6, 9-

---

[10]  While Petitioner also asserts his inability to "ensure that a decision will ever be made" (Pet. 10), a decision with respect to Petitioner's custody status was made on October 5, 2005, and another decision was made around June 15, 2006.  (Administrative R. at Exs. A, M.)  While it appears that these decision differed from that desired by Petitioner, this mere fact does not indicate a danger "that [no] decision will ever be made."  Since the issue is not ripe for

10.)  In view of these assertions, this Court concludes that Petitioner challenges the

constitutionality of 8 C.F.R. § 241.4, as applied (with respect to the timeliness aspect), or as

drafted (with respect to having review on demand and by a body other than the agency).[11]  Both

challenges, however, lack merit.

　　　　Petitioner errs with respect to his assertion that 8 C.F.R. § 241.4 was unconstitutional as

applied to Petitioner.  Moreover, it appears that Petitioner misread the regulatory mandate.

────────────────

resolution, this Court does not need to address it at this time.

　　　[11]  Petitioner's Petition also states that, since "[o]n December 19, 2005, Petitioner
forwarded Request for Release from Detention to Headquarters Post-order Detention Unit
("HQPDU") (Pet. 8), "Respondents violated their own regulation by failing to acknowledge or
act upon Petitioner's . . . request . . . in a timely manner."  (Pet. 11) (citing 8 C.F.R.
§ 241.13(e)(1)).  Section 241.13(e), however, provides, in pertinent part, as follows:

　　　(1) Initial response.  Within 10 business days after the HQPDU receives the
　　　request (or, if later, the expiration of the removal period), the HQPDU shall
　　　respond in writing to the alien .
　　　. . .
　　　(2) Lack of compliance, failure to cooperate.  The HQPDU shall first determine if
　　　the alien . . . has failed to cooperate fully in effecting removal . . . .  If so, the
　　　HQPDU shall so advise the alien in writing . . . of the efforts [the alien] needs to
　　　make in order to assist in securing travel documents . . . as well as [of] the
　　　consequences of failure to make such efforts or to cooperate . . . .

8 C.F.R. § 241.13(e).

　　　While Petitioner's AR does not contain his Request of December 19, 2005, it
does contain written notices issued to Petitioner on December 22, 2005, January 18, 2006, and
March 1, 2006, each advising Petitioner of the consequences of failing to cooperate and of the
efforts Petitioner needed to make in order to assist in securing travel documents.  (Administrative
R. at Ex. J.)  Thus, even if this Court is to presume that Petitioner submitted his Request on
December 19, 2005, it appears that Respondents painstakingly complied with the requirements of
8 C.F.R. § 241.13(e) by responding to Petitioner in three days by forwarding him the documents
prescribed by regulation.  Therefore, this Court need not reach the issue whether a hypothetical
violation of the notice requirement contained in 8 C.F.R. § 241.13(e) could ever amount to a
violation of an alien's procedural due process rights.

The regulation at issue provides, in pertinent part, that "[t]he initial HQPDU review will ordinarily be conducted at the expiration of the three-month period after the 90-day review or as soon thereafter as practicable.  The Service will provide the alien with approximately 30 days notice of that review."  8 C.F.R. § 241.4(k)(2)(ii).  Since Petitioner's order of removal became final on May 23, 2005 (Pet. 4), his "three-month period after the 90-day review" elapsed around November 23, 2005.  Since Petitioner's custody review was conducted on October 5, 2005 (Administrative. R. at Ex. A), and he was issued a Notice to Alien of File Custody Review twenty-three days prior to the review, that is, on September 12, 2005 (Administrative at Ex. H), this Court: (1) concludes that the agency complied with the requirements of Subsection 241.4(k); and (2) does not need to reach the hypothetical issue of whether a deviation from the timetable set forth in § 241.4 could amount to a violation of procedural due process.

Lastly, this Court shall address Petitioner's assertion that Section 241.4 is constitutionally defective, as drafted, because the regulation does not provide removable aliens like Petitioner with the right to have their custody review scheduled on the alien's demand and/or executed by the entity other than the agency officials listed in Subsection 241.4(a).  In order to conduct this analysis, this Court has to examine the enabling statutory authorities underlying the delegated mandate of the agency.[12]

---

[12]  To determine whether an agency's interpretation of the enabling statute is "in accordance with law," the Court must undertake the two-step analysis prescribed by Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837 (1984).  Under the first step, the Court reviews the agency's construction of a statutory provision to determine whether "Congress has directly spoken to the precise question at issue."  Chevron U.S.A. Inc, 467 U.S. at 842.  "To ascertain whether Congress had an intention on the precise question at issue, [the Court] employ[s] the 'traditional tools of statutory construction.'"  Timex V.I., Inc. v. United States, 157 F.3d 879, 882 (Fed. Cir. 1998) (citing Chevron, 467 U.S. at 843 n.9).  "The first and foremost 'tool' to  be used is the statute's text, giving it its plain meaning.  Because a statute's text is Congress's final expression

The enabling statutes underlying Section 241.4 are: 5 U.S.C. §§ 301, 552, 552a; 8 U.S.C. §§ 1103, 1182, 1223, 1224, 1225, 1226, 1227, 1228, 1231, 1251, 1253, 1255, 1330, 1362; 18 U.S.C. §§ 4002, 4013(c)(4); and 6 U.S.C. § 101, et seq.  See 8 C.F.R. § 241.4 ("Authority"). However, nothing in the language, construction or legislative history of these provisions indicates that Congress intended for an alien to have either the authority to compel a custody review or the right to seek a review by a body other than the delegated agency.  Therefore, this Court finds that the agency's statutory interpretation for the purposes of tailoring the procedures of an alien's custody reviews is a constitutionally permissible, reasonable, and rational construction of the enabling mandates.  See Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837, 843 (1984).

Based on the foregoing, this Court denies Petitioner's application seeking the issuance of a Writ of Habeas Corpus.  Petitioner may seek subsequent review in another § 2241 petition should he develop evidence to support the notion that his removal is no longer reasonably foreseeable.

---

of its intent, if the text answers the question, that is the end of the matter."  Timex V.I., Inc., 157 F.3d at 882 (citations omitted).  Beyond the statute's text, the tools of statutory construction "include the statute's structure, canons of statutory construction, and legislative history."  Id.  If, after employing the first prong of Chevron, the Court determines that the statute is silent or ambiguous with respect to the specific issue, the question for the Court becomes whether Commerce's construction of the statute is permissible.  See Chevron, 467 U.S. at 843. Essentially, this is an inquiry into the reasonableness of the agency's interpretation.  See Fujitsu Gen. Ltd. v. United States, 88 F.3d 1034, 1038 (Fed. Cir. 1996).  Provided the agency has acted rationally, the Court may not substitute its judgment for the agency's.  See Koyo Seiko Co. v. United States, 36 F.3d 1565, 1570 (Fed. Cir. 1994) (holding that "a court must defer to an agency's reasonable interpretation of a statute even if the court might have preferred another").

## <u>CONCLUSION</u>

Petitioner's application seeking a Writ of Habeas Corpus, pursuant to § 2241, is denied.

An appropriate Order accompanies this Opinion.


_____s/Joseph A. Greenaway, Jr._____
JOSEPH A. GREENAWAY, JR., U.S.D.J.


Dated: March 2, 2007

-15-